UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM GIVENS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No.: 1:12-cv-0611 AWI- BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**INTRODUCTION**

Plaintiff William Givens ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act.[1]  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe, for findings and recommendations.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff previously applied for disability insurance benefits ("DIB") and SSI under Titles II and XVI of the Act on November 29, 2006. Those applications were denied by an ALJ on June 20, 2008 (AR 82-90) and by the Appeals Council on February 20, 2009, making the Commissioner's decision final. AR 96-98. On March 11, 2009, Plaintiff filed his current application for SSI alleging disability beginning January 21, 2008. AR 18.[2] Plaintiff's application was denied initially and on reconsideration. AR 18. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ William C. Thompson, Jr. held a hearing on, October 5, 2010, and issued an order denying benefits on December 23, 2010. AR 18-31. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-3. This appeal followed.

### Hearing Testimony

The ALJ held a hearing on October 5, 2010, in Stockton, California. AR 45. Plaintiff appeared and testified. AR 18. He was represented by attorney Jeffrey Milam. AR 45. Impartial Vocational Expert ("VE") Stephen Schmidt also testified. AR 45.

Plaintiff was born on December 31, 1958 and was fifty-one years old at the time of the hearing. AR 51. He has a sixth grade education and is unable to read and write. AR 52. Plaintiff previously worked as a foreman for a cable company and stocker at a liquor store. AR 52-54. He last worked two and a half years ago at a church for four hours per day cleaning and vacuuming for $100 or $150 every two weeks in exchange for a place to live. AR 53.

Plaintiff currently lives at a halfway house where he completes chores such as dusting and wiping counters. AR 58, 71. When asked about a typical day, Plaintiff testified he went to an AA meeting, church, or volunteered to help homeless people. AR 58-59. He testified that he could drive, lift a gallon of milk, walk a couple blocks, bathe, and dress himself. AR 59-61.

When asked about his impairments, Plaintiff stated that he is unable to stand or sit for long periods of time. AR 55. Plaintiff testified that he has experienced recurring problems with his back

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

since 1988 or 1989. AR 55. After his recent back surgery, Plaintiff testified his legs burned and he had trouble standing and sitting. AR 55. He testified that he could not stand for more than 10 or 15 minutes because his legs went numb and pain shot down his legs. AR 59. Plaintiff estimated that he could sit for 20 to 30 minutes at a time. AR 60. He testified that he would lie down up to two-and-one-half hours per day. AR 62.

Thereafter, the ALJ elicited testimony of the vocational expert ("VE") Stephen Schmidt. AR 71-74. The VE testified that Plaintiff previously worked as a construction worker (Dictionary of Occupational Titles (DOT) No. 869.664-014) and stock clerk (DOT No. 299.367-014), which are generally performed at the heavy exertional level. AR 71. The ALJ asked the VE hypothetical questions, contemplating a "51-year- old individual, educated to the sixth grade who is illiterate and able to communicate in English." AR. 71-72. This individual can lift 20 pounds occasionally and lift 20 pounds frequently. He can sit six hours out of an eight hour day, can stand or walk for six hours out of an eight hour day. AR 72. Additionally, this individual must avoid climbing ladders, ropes, or scaffolding, should not work at heights or around hazardous machinery, and he is not well suited for a job requiring good hearing. The individual is limited to work involving simple instructions and restricted contact with the public. The VE testified that this individual could not perform his past relevant work. However, the VE testified that a person with such limitations could perform other jobs in the national economy such as cleaner (DOT No. 323.687-014), packer (DOT No. 920.685-026), and laundry worker (DOT No. 361.587-010), which are generally performed at the light exertional level. AR 72.

Plaintiff's counsel then asked the VE to consider the same individual in the first hypothetical question except with the additional restriction that this individual is limited to sitting for fifteen to twenty minutes, cannot walk more than fifteen minutes at a time, and should avoid bending, crawling, or operating heavy equipment. AR 73. The VE indicated that such an individual would be unable to perform any work as it exists in the national economy. AR 73.

**Medical Record**

The entire medical record was reviewed by the Court. AR 239-508. The medical evidence will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 18-31. More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since March 11, 2009. AR 20. Further, the ALJ identified degenerative disks, status post discectomy and fusion, obesity, depression, and hearing difficulty as severe impairments. AR 21. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 21.

Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work except that he could not climb ladders, ropes, scaffolds, work at heights or with hazardous machinery, perform jobs requiring good hearing, and he was limited to working with simple instructions and restricted contact with the public. AR 23. The ALJ subsequently found that Plaintiff was unable to perform his past relevant work. AR 29-30. However, based on Plaintiff age, education, work experience, and RFC, the ALJ determined that significant jobs exist in the national economy that Plaintiff could perform. AR 30. The ALJ therefore found that Plaintiff was not disabled under the Social Security Act. AR 30.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commission must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and

if the Commission's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

# REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

# DISCUSSION[3]

## 1. The ALJ Did Not Err in Rejecting Plaintiff's Treating Physician's Opinion

Plaintiff's sole argument is that the ALJ failed to give specific and legitimate reasons for rejecting the opinion of his treating physician Dr. Wenstrup. Specifically, Plaintiff alleges that the ALJ rejected Dr. Wenstrup's opinion because it was not supported by clinical findings, in particular that the range of motion in his back was normal. (Doc. 13 at 3).  According to Plaintiff, "this reason fails the standard." The Commissioner responds that the ALJ gave several reasons for giving Dr. Wenstrup's one-page questionnaire and subsequent opinion "little weight."  (Doc. 18 at 9).

### A. Legal Standard

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  As a general rule, more weight should be given to the opinion of a treating source than to

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

5

the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007). *See also*, 20 C.F.R. § 404.1527(c)(1)-(2). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." 20 C.F.R. § 404.1527(c)(2).

If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. *Id*. § 404.1527(c)(2)(i)-(ii). Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. *Id.* § 404.1527(c)(3)-(6).

**B.     The ALJ Provided Specific and Legitimate Reasons to Discount Dr. Wenstrup's Opinion**

Plaintiff treated with his primary care physician, Dr. Wenstrup, about once a month between April 16, 2008 and March 24, 2009. AR 28; 263-277. On April 16, 2008, Plaintiff visited Dr. Wenstrup and she encouraged continued exercise and weight loss and described Plaintiff's pain as "stable." AR 276. On July 18, 2008, Plaintiff met with Dr. Wenstrup and complained of acute right-sided back pain with pain down the leg and was prescribed Vicodin. AR 271. On July 30, 2008, Plaintiff complained of back pain and said he was in bed a lot, the Vicodin did not help, but a steroid epidural "really helped." AR 270. Dr. Wenstrup performed a straight leg raise test that was positive at 45 degrees on the right. AR 270. Dr. Wenstrup prescribed Morphine and Neurontin for pain. AR 270.

On August 27, 2008, Plaintiff complained that his back was sore; although Morphine helped, he alleged that he could not sleep due to pain. AR 269. Dr. Wenstrup prescribed Morphine and Vicodin. AR 269. On September 26, 2008, Plaintiff complained that his back was hurting and an epidural injection did not help, but he was able to walk. AR 268. His Morphine prescription was continued. AR 268. On October 24, 2008, Plaintiff visited Dr. Wenstrup and complained of pain and muscle tension and was prescribed Morphine and Vicodin. AR 266. On November 25, 2008, Plaintiff requested to taper off the Morphine and said that he wanted to go on State disability. AR 267. At his December 30, 2008 appointment, Plaintiff reported that his medications were "working really well" and his "pain [was] under control [with] Ultram three times per day. AR 265.

A March 2, 2009, MRI of the lumbar spine showed mild disk degeneration with disk protrusion and mild narrowing of the foraminal canal at the L4-5 level and mild disk degeneration at the L5-S1 level. AR 256-257. On March 24, 2009, Plaintiff was given an epidural injection, and his prescription was changed to Vicodin. AR 263. On May 5, 2009, Plaintiff complained of increased pain and numbness. AR 368.

On May 12, 2009, Plaintiff reported that Methadone eased his pain but his last epidural did not help. AR 367. In an appointment at the neurosurgical clinic on the same day, Dr. Bairamian observed

that Plaintiff was alert and in no distress; he complained of tenderness to palpitation in the lower back and discomfort with lateral bending, twisting, and extension; and a straight leg raise test caused back pain (but not radicular pain) at 90 degrees. AR 370. Dr. Wenstrup continued Plaintiff's prescriptions on that day and at appointments in June, July, and August 2009. AR 364-367.

On August 20, 2009, Plaintiff had spinal fusion surgery performed by Benjamin Remington, M.D. Post-surgery, Plaintiff met with Dr. Wenstrup one time on September 9, 2009. AR 363. Dr. Wenstrup reported that Plaintiff experienced occasional numbness and constipation. AR 363. Dr. Wenstrup prescribed Methadone and Vicodin. AR 363.

On September 10, 2010, Dr. Wenstrup filled out a one-page questionnaire, wherein Dr. Wenstrup responded "yes" to the question of whether Plaintiff had medical problems which prevented him from performing full-time work. AR 402. Dr. Wenstrup opined that Plaintiff's primary impairment was "chronic back pain and laminectomy" AR 402. The objective finding on which she based this opinion was listed as "tender lumbar paraspinal." AR 402. Dr. Wenstrup thought that Plaintiff could sit for 15 to 20 minutes, stand for 10 minutes, and walk for 15 minutes at a time. AR 402. She opined that Plaintiff met or equaled Listing 1.04 for spinal disorders due to a positive straight leg test at 20 to 30 degrees. AR 402. Dr. Wenstrup indicated that Plaintiff did not need to lie down or elevate his legs during the day, but she stated that Plaintiff should not bend, crawl, or operate heavy equipment. AR 402. Finally, Dr. Wenstrup opined that Plaintiff had been disabled since July 2008. AR 402.

The ALJ afforded Dr. Wenstrup's opinion "little weight" for three reasons: (1) because Dr. Wenstrup's opinion was contrary to the weight of the medical evidence; (2) Dr. Wenstrup's opinion did not reflect Plaintiff's testimony concerning his abilities; and (3) Dr. Wenstrup's opinion did not reflect Plaintiff's condition after his August 20, 2009 back surgery, as she only saw him once shortly thereafter. AR 28, 342-344, 363 (September 1, 2009 appointment).

A treating physician's medically supported opinion regarding the nature and severity of a disability claimant's impairments is generally given great weight. 20 C.F.R. § 404.1527(d)(2); *Orn v. Astrue*, 495 F.3d at 625; *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Even if a treating doctor's opinion is contradicted, an ALJ may disregard it only by giving specific and legitimate reasons for

doing so that are supported by substantial evidence in the record. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Nonetheless, the ultimate determination of disability (*i.e.* whether a claimant can perform work in the national economy) rests solely with the Commissioner, and a physician's statement that a claimant is "unable to work" is not entitled to special weight. 20 C.F.R. 416.927(e); *see Tonapetyan*, 242 F.3d at 1148-49 (ALJ not bound by opinion of treating physician with respect to ultimate determination of disability). Moreover, an ALJ need not accept the opinion of any medical source, including a treating medical source, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas,* 278 F.3d 947,957 (9th Cir. 2002); *accord Tonapetyan*, 242 F.3d at 1149.

The ALJ gave several specific and legitimate reasons for rejecting Dr. Wenstrup's opinion. First, the ALJ found that Dr. Wenstrup's opinion was inconsistent with the other physicians' opinions and with the medical record. The ALJ described the opinion of Dr. Wenstrup, as well as the other medical opinions, and concluded that Dr. Wenstrup's opinion was inconsistent with the objective medical evidence. AR 28. Most notably, no credited opinion assessed limitations as extreme as those assessed by Dr. Wenstrup (i.e., finding that Plaintiff would only be able to sit for 15 to 20 minutes and could stand for 10 minutes and walk for 15 minutes). AR 402. In contrast, the ALJ considered the opinions of examining physician Frank Chen, M.D. and State Agency Physicians, W. Jackson, M.D., and I. Ocrant, M.D.

The ALJ's evaluation of the medical evidence was supported by consultative examiner Dr. Chen's May 2009 findings. AR 27, 301-302. After evaluating Plaintiff on May 15, 2009, Dr. Chen opined that Plaintiff was "in no acute distress." AR 301. He opined that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently. AR 302. Dr. Chen observed that Plaintiff walked and sat without difficulty, a straight leg raise test was negative, his lumbar range of motion was normal (including flexion or bending), and he had normal muscle tone, strength, gait, and coordination. AR 302. Dr. Chen also opined that Plaintiff had no functional limitations. AR 302. The ALJ did not agree that Plaintiff was completely free of any functional limitations, and the ALJ in turn gave Dr. Chen's opinion reduced weight. However, the ALJ was entitled to rely on Dr. Chen's

objective clinical findings and the fact that Dr. Chen's opinion differed significantly from that of Dr. Wenstrup. *See Tonapetyan,* 242 F.3d at 1149 (examining physician's opinion constitutes substantial evidence supporting the RFC, provides valid evidence to reject a treating physician's opinion, and assures the record is sufficiently developed); *Magallanes*, 881 F.2d at 752-53 (decision to reject treating physician was supported by evidence in consultative examiner's report).

The ALJ also credited the opinion of Dr. Ocrant. Dr. Ocrant reviewed Plaintiff's file on June 9, 2009. The ALJ noted that Dr. Ocrant opined that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently and he could stand/walk and sit for six hours each. AR 442. Dr. Ocrant did not think that Plaintiff had any postural or manipulative limitations, but he opined that Plaintiff should avoid concentrated exposure to noise, machinery, and heights. AR 309-310. Dr. Ocrant opined that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, he could stand/walk and sit for six hours, and he did not have other postural or manipulative limitations. AR 308-309. Dr. Ocrant found that Plaintiff had normal muscle tone, bulk, and strength in May 2009.

In addition, the ALJ gave reviewing physician Dr. Jackson's opinion significant weight. Dr. Jackson, a specialist in surgery, reviewed Plaintiff's medical records on November 19, 2009. The ALJ noted that Dr. Jackson adopted the prior ALJ's RFC as written on June 9, 2009. The ALJ further found that Dr. Jackson's opinion was supported by tests indicating that Plaintiff demonstrated motor strength within normal limits, at 5/5. AR 27. Dr. Jackson also noted that Plaintiff had lumbar surgery without complications.

Here, the most that any physician found was mild to moderate physical limitations, and no other physician stated that Plaintiff could not work. In fact, every other physician concluded that Plaintiff retained significant physical capacity. AR 27. There was a conflict between Dr. Wenstrup's opinion and the weight of the other medical evidence, and the ALJ legitimately decided that Dr. Wenstrup's opinion was an outlier and credited it "little weight" AR. 28. The ALJ properly resolved the conflict between Dr. Westrup's opinion and the opinions of every other medical source in the record that Plaintiff had mild functional limitations. *See Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995) (holding that it is the responsibility of the ALJ to resolve conflicts and ambiguities in the medical record and determine the credibility of medical sources).

   Second, the ALJ correctly discredited Dr. Wenstrup's medical opinion because it was not supported by clinical findings. This was an appropriate reason to reject Dr. Wenstrup's opinion. Three months before Dr. Wenstrup opined that Plaintiff was incapable of work, a June 23, 2010 lumbar CT showed good fusion at the L5-S1 level and early bone growth at the L4-5 level. AR 386. In addition, a nerve conduction study, which was undertaken to evaluate the cause of Plaintiff's reported leg pain, was negative. AR 25, 385, 388. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ properly discounted the claimant's allegations of severe low back pain because "the MRI and xrays show only mild degenerative disc disease at L5-S1" and "no apparent disc herniation or nerve root impingement"). The ALJ did not err in concluding that Dr. Wenstrup's opinion was unsupported by clinical findings.

   Third, the ALJ discredited Dr. Wenstrup's opinion in part because it conflicted with Plaintiff's statements regarding his own physical abilities. AR 28. Dr. Wenstrup opined that Plaintiff could sit for 15-20 minutes, stand for 10 minutes, and walk for 15 minutes; but Plaintiff did not need to lie down during the day. AR 402. At the hearing, Plaintiff testified that he went to Alcoholics Anonymous meetings two to three times a week, church, and volunteered at a facility for homeless; he said that he could drive, lift a gallon of milk, walk a couple blocks, and bathe and dress himself. AR 59-61. Elsewhere in the record, Plaintiff said he could drive, go outside daily by himself, do household chores such as laundry, dishes, and dusting for an hour, shop in stores for 30 minutes, watch TV, and go to baseball games. AR 23, 27, 202-204, 301, 304. The ALJ recognized Dr. Wenstrup's postural restrictions were more restrictive than Plaintiff's self-reported limitations that he could drive, perform household chores for an hour, shop, attend meetings, church and baseball games, watch TV, and volunteer at a homeless facility. AR 23, 27-28, 59-61, 201-204, 304. The ALJ did not err in discounting Dr. Wenstrup's opinion on this ground.

   Finally, the ALJ properly discredited Dr. Wenstrup's questionnaire because Dr. Wenstrup met with Plaintiff on only one occasion shortly after his back surgery. AR 28, 363. Dr. Wenstrup's September 3, 2010 questionnaire was dated a year after her last treatment note on September 9, 2009. AR 402. After his August 20, 2009, back surgery, Plaintiff primarily met with his surgeon Dr. Remington for post-operative visits. Dr. Remington saw Plaintiff for a follow-up on October 12, 2009,

11

at which time Dr. Remington reported that Plaintiff "ha[d] done very well postoperatively," though he reported a return of "severe pain especially in [both] legs." AR 391. Plaintiff stated that his "back feels pretty good," but he was not walking much. AR 391. An x-ray showed the instrumentation was in good position. AR 391. Dr. Remington planned for Plaintiff to wean off his back brace and return in two months; he prescribed Norco for pain. AR 391.

On November 30, 2009, Plaintiff reported that his low back was better, and Dr. Remington continued to evaluate him as "doing very well postoperatively," though Plaintiff complained of bilateral foot pain. AR 390. Dr. Remington counseled him not to take heavier narcotics because they would not help neuropathic pain; instead, Dr. Remington prescribed Lyrica and requested that Plaintiff return in three months. AR 390.

On February 24, 2010, Plaintiff reported that Lyrica "helped a lot" and he only had "occasional burning in his legs when standing for too long." His back pain was "a lot better" and Dr. Remington continued to describe him as having "done well postoperatively." AR 389. Dr. Remington recommended physical therapy and a follow-up in four months. AR 389.

On June 7, 2010, Plaintiff said that he had very little back pain but severe foot pain. AR 388. Dr. Remington ordered a nerve conduction study and CT to assess whether there was nerve compression. AR 388. A June 23, 2010 CT scan did not show stenosis or neuroforaminal narrowing, and it showed good fusion at the L5-S1 level and early bone growth, but not complete fusion, at the L4-5 level. AR 386. The nerve conduction study results were normal. AR 385. Dr. Remington suggested daily stretching and walking four to five times per week. AR 386.

The ALJ properly discounted Dr. Wenstrup's opinion given Dr. Wenstrup's lack of recent treatment history following Plaintiff's surgery. 20 C.F.R. § 416.927(d)(2)(i) (considering frequency of examination in weighing treating source opinion); *Orn v. Astrue*, 495 F.3d 625, 633-34 (9th Cir. 2007) (recognizing importance of continuous and recent treatment history after a "significant medical event"). The ALJ found it significant that there are little, if any, treatment notes from appointments with Plaintiff following his August 20, 2009 surgery. AR 28. Further, Plaintiff's recent treatment history from Dr. Remington indicating that his back pain has improved directly contradicts Dr. Wenstrup's final report that he is experiencing chronic back pain. AR 402. Dr. Wenstrup's final

questionnaire makes no mention of Plaintiff's post-surgery improvement or includes any references to on-going leg pain. The ALJ's decision to discount Dr. Wenstrup's opinion on these grounds was specific and legitimate.

Overall, the ALJ articulated several specific and legitimate reasons for rejecting Dr. Wenstrup's opinion. The ALJ was entitled to resolve the conflict between Dr. Wenstrup's opinion and those of the other doctors in favor of the conclusion supported by the consistent objective evidence. Accordingly, the Court will not reverse or remand the ALJ's decision for failure to properly weigh Plaintiff's treating physician's medical opinion testimony.

## RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Carolyn W. Colvin and against Plaintiff William Givens.

These findings and recommendations will be submitted to the district judge pursuant to the provisions of Title 28 of the United States Code section 636(b)(l). Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **August 29, 2013**       /s/ Barbara A. McAuliffe
UNITED STATES MAGISTRATE JUDGE